

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-30-2004

# Askari v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2264

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Askari v. Atty Gen USA" (2004). *2004 Decisions.* Paper 316.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/316

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 03-2264 & 03-4456

SAMIEH ASKARI,

Petitioner

v.

JOHN ASHCROFT, Attorney General
of the United States

Respondent

On Petition for Review of an Order Entered in
The Board of Immigration Appeals
(No. A 76-512-182)

Submitted Under Third Circuit LAR 34.1(a)
September 14, 2004

Before: SCIRICA, Chief Judge, ALITO and AMBRO, Circuit Judges

(Filed   September 30, 2004 )

OPINION

AMBRO, *Circuit Judge*

Samieh Askari petitions for review of the order of the Board of Immigration

Appeals ("BIA") affirming the denial by an Immigration Judge ("IJ") of her applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Central to the IJ's decision was his finding that Askari's claims of a well-founded fear of persecution upon return to her native country were not credible. But even if Askari's claims were credible, they would not rise to the level of persecution, as required for asylum relief. Therefore, we deny her petition for review of the BIA's decision to deny her relief, as well as its denial of her motion to reconsider this decision and her motion to reopen.

## I. Facts and Procedural Posture

Askari, a native and citizen of Iran, arrived in the United States in March 1999. The Immigration and Naturalization Service[1] ("INS") immediately placed her in removal proceedings, charging her with removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I) for arriving in the United States without proper documentation. In August 1999 she filed an initial application for asylum, withholding of removal, and protection under the CAT, claiming that she left Iran to escape the threat of arrest and torture in retaliation for anti-government activism she engaged in while a medical student at Tehran University. In her application and at a hearing before the IJ, she testified that the Iranian government restricted her studies and professional advancement and that on two occasions she was

---

[1]As a result of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002), the INS has since ceased to exist as an agency within the Department of Justice and its enforcement functions have been transferred to the Department of Homeland Security.

2

detained, interrogated, and beaten by Iranian police.

On April 3, 2000, the IJ denied Askari's applications for relief after finding that her testimony was not credible. Askari appealed to the BIA, which on April 4, 2003, affirmed the IJ's decision, including his adverse credibility finding "where he found the respondent to be incredible based upon her statements made to an immigration official upon arrival." JA at 21. The BIA also agreed with the IJ's "essential conclusion that nothing the respondent has described about her experiences in Iran would rise to the level of persecution." *Id.* Askari's appeal of the BIA's decision denying her applications for relief is No. 03-2264.

On May 2, 2003, Askari timely filed a Motion to Reconsider with the BIA. On July 1, 2003, she timely filed a Motion to Reopen based on a change of circumstances in Iran since the IJ's decision. In October, the BIA denied both of these motions in one decision. Askari's appeal of this decision is No. 03-4456. In April 2004, our Court granted Askari's motion to consolidate the two pending appeals.[2]

## II. Analysis

### A. Denial of Asylum Relief

Under the Immigration and Nationality Act ("INA"), the Attorney General and his delegates, the BIA and IJ, may grant asylum to any alien who qualifies as a refugee. 8 U.S.C. § 1158. A refugee is an alien who is unable or unwilling to return to her country of origin "because of persecution or a well-founded fear of persecution on account of

---

[2]Our appellate jurisdiction is proper under 8 U.S.C. § 1252(a)(1).

race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). Aliens have the burden of supporting their asylum claims. Testimony by itself is sufficient to meet this burden, as long as it is credible. *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002).

Askari supported her asylum application with testimony that the Iranian government suppressed her educational and professional advancement in retaliation for her political activism. She claimed that she was prevented from pursuing a specialty in internal medicine when the government placed conditions on her entrance into a residency program. In particular, she was asked to sign an agreement that would make her liable for a penalty (twice the expenses of her tuition plus twice her salary and allowance) if she was dismissed from the program or decided to leave, which Askari refused to sign. She argued that this contract was intended to suppress political activity by enabling the government to hold the threat of dismissal, and thus the penalty, over her. The IJ found that the contract (which also required Askari to work for two years in the public service) did not put such a "heavy burden" on Askari as to support her claim that she was prevented from practicing internal medicine and speculated that "if the Iranian government had indeed wanted to punish the respondent for her political activities, they would have prohibited her from studying internal medicine in the first place, and not given her the opportunity of entering her specialty after signing the contract." JA at 16.

Askari also claimed that she was denied admission to medical school for three years because of her political activities as teenager. The IJ found this testimony

4

inconsistent with documentation from the government's education ministry that she was not immediately accepted into medical school because of academic ineligibility. He found it implausible that the government would punish Askari by delaying her entrance to medical school rather than denying her altogether. JA at 15.

Aksari testified that both of her sisters were denied university education for several years. But the IJ doubted that this delay was retaliation for their political activities because the government did not "ban[] them from higher education altogether." JA at 17. She testified that her brother was expelled from medical school after giving a political speech and that, eleven years later, he still did not work and suffered clinical depression. But because Askari refused to discuss her brother's medical situation, the IJ could not find based on the limited testimony available that he had suffered persecution. *Id*.

Askari told the IJ that twice in 1998 she was detained, interrogated, beaten, and threatened after attending and speaking at a political meeting. Askari insisted that this testimony did not conflict with what she told immigration officials upon arrival in the United States—that she had never been "arrested" in Iran—because she had not been put in jail on those occasions. The IJ was not convinced by this "fine line distinction" and determined that Askari had fabricated the 1998 events to bolster her asylum application. In any event, he did not find that "being placed in confinement on two or three occasions amounted to persecution, based on what she has told me occurred during those occasions." JA at 16. On appeal, the BIA rejected this particular inconsistency as a basis for an adverse credibility finding, but endorsed the IJ's conclusion that it did not rise to

5

the level of persecution, as required to support an asylum claim.

Askari argues on appeal that the IJ's findings of inconsistencies and improbabilities were based on speculation or conjecture and thus do not qualify as substantial evidence required to support an adverse credibility finding. She argues that the IJ overlooked the suppressive effect of the conditions of her entrance into an internal medicine residency program, and that his conclusion that she was academically ineligible was not based on any record evidence. Therefore, she insists, the adverse credibility finding cannot stand.

But even if the IJ had found Askari's testimony to be credible, it would not establish that she was persecuted or has a well-founded fear of persecution as required for asylum relief.[3] Though the INA provides no definition of persecution, we have recognized it as an "extreme concept that does not include every sort of treatment our society regards as offensive." *Fatin v. INS*, 12 F.3d 1233, 1243 (3d Cir. 1993). Persecution includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Id*. at 1240. In Askari's case, she was able to enroll in medical school, receive her degree, and practice medicine after graduation. Her argument that she was denied an opportunity to specialize in a particular

---

[3]To be eligible for asylum, the applicant must demonstrate persecution by substantial evidence or a well-founded fear of persecution that is subjective and objectively reasonable. *Lukwago v. INS*, 329 F.3d 157, 177 (3d Cir. 2003). Having found Askari to be ineligible for asylum, the IJ did not need to consider whether she qualified for mandatory withholding of removal or protection under the CAT, which both require an applicant to make an even stronger showing—that it is "more likely than not" that the applicant will be persecuted or tortured upon return to her home country. *Id*. at 182–83.

area of medicine is not persecution. For economic deprivation—such as denial of employment—to be considered persecution, it must rise to the level of deliberate imposition of substantial economic disadvantage. *See, e.g.*, *Chen v. INS*, 195 F.3d 198, 204 (4th Cir. 1999). At worst, Askari was deterred from enrolling in an internal medicine residency program by the Iranian government's conditions on her entrance. Regardless whether those conditions were onerous or intended to suppress her political activity, they do not rise to the level of persecution. *See, e.g.*, *Zalega v. INS*, 916 F.3d 1257, 1260 (7th Cir. 1990) (inability to obtain the government job that one prefers is not persecution).

Moreover, Askari's testimony about being mistreated at the hands of Iranian police does not rise to the level of persecution. She was detained only briefly, and her claims that she was beaten up and threatened are general and vague. On this evidence, it was reasonable for the IJ to conclude, and the BIA to affirm, that these episodes were not persecution or the basis for a well-founded fear of persecution. *See, e.g.*, *Prasad v. INS*, 47 F.3d 336, 339–40 (9th Cir. 1995) (affirming IJ's finding that alien had not suffered persecution, notwithstanding testimony that he was jailed, interrogated for four to six hours, hit in the stomach and kicked from behind); *Kapcia v. INS*, 944 F.2d 702, 704, 708 (10th Cir.1991) (denial of asylum upheld despite fact that petitioner was "detained for a two-day period during which time he was interrogated and beaten").

Because Askari's testimony, even if credible,[4] would not establish that she had

---

[4]In this context, we need not reach Askari's arguments that the BIA insufficiently explained its decision to reject one aspect of the IJ's rationale for his adverse credibility finding while upholding the finding overall.

been persecuted or had a well-founded fear of persecution, we uphold the BIA's order affirming the IJ's denial of asylum, withholding of removal, and CAT relief. For the same reason, we affirm the BIA's order denying her motion to reconsider.

**B.    Denial of Motion to Reopen**

In July 2003 Askari moved the BIA to reopen its proceeding against her due to a "material change in circumstances in Iran since the IJ's decision." She supported her motion with a State Department publication and evidence of her political activities in the United States since the IJ's April 2000 decision. The BIA denied this motion because Aksari's evidence was not previously unavailable or that it failed to demonstrate a change in circumstance that materially affected her eligibility for asylum.

A motion to reopen must state the new facts that will be proven at a hearing to be held if the motion is granted and must be supported by affidavits or other evidentiary material. 8 C.F.R. § 1003.2(c)(1). We review a denial of a motion to reconsider for abuse of discretion. *INS v. Abudu*, 485 U.S. 94, 96 (1988). The BIA abuses its discretion when it applies an incorrect legal principle or makes factual findings that are arbitrary and capricious or lacking in substantial evidence. *Tipu v. INS*, 20 F.3d 580, 582 (3d Cir. 1994).

The BIA's conclusion that evidence of Askari's political activities in the United States was not previously unavailable and did not materially affect her eligibility for asylum was neither arbitrary nor contrary to the evidence. The record before the IJ referenced Askari's political activities in the United States, and Askari does not explain

8

how her subsequent political activities in the United States contribute to a well-founded fear of persecution in a materially different way. Nor was it an abuse of discretion for the BIA to conclude that new general evidence of human rights abuses in Iran did not materially affect her well-founded fear of persecution.

*     *     *     *     *

In this context, we will deny Askari's petition for review of the BIA's order affirming the IJ's denial of asylum and other relief, and we will deny her petition for review of its order denying her motion to reconsider and motion to reopen.